IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARPOSS SOCIETÁ PER AZIONI, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 16 C 9041 |
| JENOPTIK AUTOMOTIVE NORTH AMERICA, LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Marposs Società per Azioni ("Marposs Italy") and
Marposs Corporation ("Marposs US") (Marposs Italy and Marposs US
together, "Marposs") have sued defendants Jenoptik Automotive
North America, LLC ("JANA") and Jenoptik Industrial Metrology
Germany Gmbh ("JIMG") (JANA and JIMG together, "Jenoptik," or
"defendants") for patent infringement in violation of 35 U.S.C.
§ 271. The defendants have moved to dismiss Marposs's complaint.
For the reasons discussed below, the motion is denied.[1]

I.

Marposs is a developer of technology used to measure
grinding machinery and other devices used in workshop

---

[1] The defendants have filed separate motions to dismiss, but
nearly all of the arguments for dismissal have been advanced by
JANA and adopted by JIMG. For simplicity, therefore, I discuss
the filings as a single motion.

environments. On October 9, 2001, Marposs obtained U.S. Patent No. 6,298,571 ("the '571 Patent") for a device invented by two of its employees for measuring the dimensions of cylindrical parts.[2] According to Marposs, this represented a significant technological advance, allowing measurements to be taken more efficiently and accurately.

The complaint alleges that at some point prior to June 2001, Marposs learned that Etamic SA ("Etamic"), a predecessor in interest to Jenoptik, had obtained U.S. Patent No. 6,088,924 ("the '924 Patent"), covering the same invention. Marposs initiated an interference proceeding before the U.S. Patent and Trademark Office (USPTO) and ultimately prevailed. As a result, Etamic's '924 Patent was canceled and, on October 27, 2009, Marposs was awarded U.S. Patent No. 7,607,239 ("the '239 Patent").[3]

Marposs subsequently obtained two additional patents relating to similar inventions. On October 16, 2012, it obtained U.S. Patent No. 8,286,361 ("the '361 Patent");[4] and on March 11,

---

[2] The '571 Patent was entitled, "Apparatus for Checking Diametral Dimensions of Rotating Cylindrical Parts."

[3] The '239 Patent was entitled, "Apparatus for Checking Diametral Dimensions of Cylindrical Parts Rotating with an Orbital Motion."

[4] The '361 Patent was entitled "Apparatus for Checking Diametral Dimensions of a Cylindrical Part in Orbital Motion in a Numerical Control Grinding Machine."

2014, it obtained U.S. Patent No. 8,667,700 ("the '700 Patent").[5] All four of the patents -- the '571 Patent, the '239 Patent, the '361 Patent, and the '700 Patent -- are incorporated in a device manufactured and distributed by Marposs called the "Fenar L In-Process Gauging System for Crankshafts" (the "Fenar L System").[6]

According to Marposs, the defendants developed a device -- the DF500 -- that infringes the patents-in-suit. Marposs alleges that the defendants displayed the DF500 at the 2010 International Manufacturing Trade Show ("IMTS") in Chicago. After the show, Marposs contacted Jenoptik, and Jenoptik agreed to cease offering the DF500 for sale in the U.S. Jenoptik also modified its website to indicate that the device was not for sale in the U.S.

Nevertheless, Marposs alleges, the defendants again used the DF500 at the 2014 IMTS. According to the complaint, the defendants not only displayed the device at the show but also demonstrated its operation to potential customers. Following the show, Marposs contacted Jenoptik again. It is unclear how, if at all, Jenoptik responded to the communication.

---

[5] The '700 Patent was entitled, "Method for Checking the Diameter of a Cylindrical Part in Orbital Motion."

[6] All of the patents-in-suit, except the '239, expired on September 23, 2016.

No further problems arose in connection with the DF500 until the defendants again "engaged in marketing activities" in connection with the DF500 at the 2016 IMTS. In addition, in March 2016, Fives Landis Corp. and Fives Landis Ltd. ("Fives Landis"), a manufacturer of grinding machines, issued a request for proposal to Marposs to supply gauging devices. According to the complaint, Jenoptik also made a presentation to Fives Landis featuring the DF500. Marposs alleges that Jenoptik offered to sell the DF500 at prices below Marposs's. As a result, Marposs was forced to lower its prices and ended up losing money.

Marposs's complaint asserts four infringement claims, one for each of the patents-in-suit. With respect to each patent, Marposs alleges that the defendants engaged in direct infringement, induced infringement, and contributory infringement. The defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all four counts.

II.

For purposes of a Rule 12(b)(6) motion to dismiss, I take the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

4

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550
U.S. 544, 570 (2007)).

## A.   Direct Infringement

The defendants first move to dismiss Marposs's direct
infringement claims. Direct infringement occurs when a party
"uses, offers to sell, or sells any patented invention, within
the United States or imports into the United States any patented
invention during the term of the patent." 35 U.S.C. § 271(a).
Marposs contends that the defendants violated the statute by
"using" the DF500 at the IMTS events and also by "offering to
sell" the device to Fives Landis.

## 1.   Use

The defendants argue that Marposs fails to allege that they
"used" the DF500 within the meaning of § 271(a). They contend
that any conduct at the 2010 IMTS falls outside of the Patent
Act's six-year limitations period and therefore is not
actionable. They also argue that Marposs's allegations in
connection with the 2010 IMTS do not constitute "use" within the
meaning of the statute because Marposs claims only that the
defendants brought the device to the show. The defendants
correctly state that mere possession of the device at the show
does not constitute "use" under the statute. *See, e.g.*, *Quantum
Grp. Inc. v. Am. Sensor Inc.*, No. 96 C 0761, 1998 WL 766707, at
*6 (N.D. Ill. Apr. 10, 1998) ("Mere possession of infringing

products does not establish liability for infringement."). Marposs does not appear to dispute any of defendants' arguments with respect to the 2010 IMTS.

The defendants further contend that Marposs's allegations regarding the defendants' demonstration of the device at the 2014 IMTS do not amount to "use" within the meaning of the statute. Their argument is based on *Medical Solutions Inc. v. Change Surgical LLC*, 541 F.3d 1136 (Fed. Cir. 2008). There, the plaintiff sued the defendant for infringing patents for technology used to control the temperature of medical and surgical items. In response to the defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff argued that the defendant had used the infringing device at a trade show in the District of Columbia. The court disagreed, observing that "[t]he ordinary meaning of 'use' is 'to put into action or service.'" *Id*. at 1141. Although the plaintiff claimed that the representatives "actively demonstrated the [device's] actual functions in use," the only evidence in support of the allegation was a declaration averring that a representative had shown an attendee how to remove a basin from the device. The court noted that this "f[e]ll short of practicing all of the elements of any one claim." *Id*. at 1141.

In some places, the defendants appear to suggest that demonstration of an infringing device at a trade show cannot

6

constitute "use" for purposes of § 271 as a matter of law. While
*Medical Solutions* acknowledged that some courts had previously
ruled to that effect, *id.* at n.4, it expressly declined to
embrace such an across-the-board rule. *Id.* at 1141. And indeed,
several courts after *Medical Solutions* have found that
demonstration of a device at a trade show can constitute "use"
under the statute. *See, e.g., C.R. Daniels, Inc. v. Naztec Int'l
Grp., LLC*, No. CIV.A. ELH-11-01624, 2011 WL 6026293, at *11 (D.
Md. Dec. 2, 2011); *Worldwide Creations, LLC v. Playhut, Inc.*,
No. 08-12159, 2009 WL 270088, at *3 (E.D. Mich. Feb. 3, 2009);
*Donnelly Corp. v. Reitter & Schefenacker GmbH & Co. KG*, 189 F.
Supp. 2d 696, 704 (W.D. Mich. 2002). I likewise decline to hold
that demonstration of an infringing device at a trade show can
never constitute "use" for purposes of § 271.

The defendants argue that Marposs's "use" claim fails with
respect to the 2014 IMTS because the complaint does not allege
that their demonstration involved use of the DF500 for its
intended purpose (i.e., to check the diameter of a part).
However, Fed. R. Civ. P. 8 does not require plaintiffs to plead
with such specificity. *See, e.g., Pierce v. Illinois Dep't of
Human Servs.*, 128 F. App'x 534, 536 (7th Cir. 2005) ("A
plaintiff need not plead legal theories nor allege all the facts
necessary to establish the essential elements of a legal theory.
Instead, the plaintiff needs to provide only a short, plain

statement of his or her grievance, and the complaint is sufficient so long as it puts defendants on notice of the of the claims and the grounds they rest upon, along with some indication ... of time and place. Thus, dismissal is seldom appropriate for lack of specificity.") (quotation marks and citations omitted). Marposs alleges that the defendants used "the DF500 device to show potential customers how the device operates." Compl. ¶ 35. It can reasonably be inferred that in showing potential customers how the device operated, the defendants used the DF500 to check the diameter of a part.

Finally, the defendants argue that even if the demonstration at the 2014 IMTS constituted a use of the infringing device, the claim fails because the alleged infringement is *de minimis*. Although recognized by a number of courts, the "de minimis exception" to infringement claims does not appear to be firmly established. *See, e.g.*, *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1352-53 (Fed. Cir. 2000) (Rader, J., concurring) ("Since its inception, this court has not tolerated the notion that a little infringement -- de minimis infringement -- is acceptable infringement or not infringement at all."). Moreover, where the exception has been recognized, its application has been limited. *Id.* at 1349 ("This court has construed ... the de minimis exception[] very narrowly."). And even where the alleged infringement is *de*

8

*minimis*, this is not necessarily fatal to an infringement claim. *See, e.g., Abbott Labs. v. Sandoz, Inc*., 566 F.3d 1282, 1299 (Fed. Cir. 2009) (noting that "de minimis infringement can still be infringement").

The defendants argue that the infringement alleged by Marposs is *de minimis* because it is limited to a single incident at the 2014 IMTS. They also argue that, since three of the four patents expired in September 2016, the alleged infringement is not likely to be repeated. However, the defendants' alleged infringement is not limited to their use of the DF500 at the 2014 IMTS. As discussed more fully below, Marposs also alleges that the defendants violated § 271 by offering the DF500 for sale. Further, at this stage, I am unable to accept the defendants' contention that their alleged infringing conduct is unlikely to recur. This is especially so in light of the complaint's allegations regarding the defendants' continued marketing of the DF500 at the 2016 IMTS. The fact that three of the patents are now expired is irrelevant. So long as one of the patents remains in effect, the possibility of future infringement exists.

For these reasons, Marposs has sufficiently alleged that the defendants committed direct infringement of the patents by using the DF500.

## 2. Offering to Sell

Marposs also alleges that the defendants infringed its patents by offering to sell the DF500 to Fives Landis. Specifically, Marposs alleges that in 2016, "Jenoptik made a presentation about the infringing DF500 device to Five Landis in or around Hagerstown, Maryland in an attempt to obtain the business for this program." Compl. ¶ 41. The complaint further asserts that "Jenoptik indicated that it would sell its infringing DF500 device to Five Landis at prices lower than Marposs." *Id.*

The defendants argue that these allegations are insufficient to establish an "offer to sell" within the meaning of § 271(a). The Federal Circuit has "defined liability for an 'offer to sell' under section 271(a) according to the norms of traditional contractual analysis." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (quotation marks omitted). "Thus, the defendant must communicate a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* (brackets and quotation marks omitted). Many courts have held that this requires that an offer to sell include a fixed price term. *See, e.g.*, *Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 966 (N.D. Ill. 2015) ("To constitute an 'offer to sell' under traditional contract principles, an offer

10

requires a definite price term, otherwise the offeree could make the offer into a binding contract by a simple acceptance.") (citing *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000)).

According to the defendants, Marposs fails to allege that they offered to sell the DF500 to Fives Landis at a specific price. I am not persuaded. As an initial matter, there are circumstances under which courts have found offers to sell under § 271 despite the lack of any fixed price term. *See, e.g.*, *Rudolph Techs., Inc. v. Camtek Ltd.*, No. CIV. 15-1246 ADM/BRT, 2015 WL 5039295, at *9 (D. Minn. Aug. 26, 2015) (presentations constituted offers to sell despite lack of specific price because purchasing decisions concerning technically sophisticated products typically involved a lengthy process); *C.R. Daniels*, 2011 WL 6026293, at *12 (offer to sell was made at conference even though no prices were discussed because attendees had no authority or ability to purchase products at the time, and because, given the customizable nature of the product, pricing was not ordinarily discussed at conferences).

Here, Marposs may be understood as alleging that the defendants essentially offered to undersell Marposs, in which case the amount of their offer would have been contingent on the amount of Marposs's offer. Thus, the defendants may have been unable to specify a price because Marposs had yet to make its

offer, or because they were unaware of Marposs's asking price. Under these circumstances, the lack of a fixed price would be attributable to the nature of the offer itself and would not betoken a lack of intent to enter into a bargain.

Further, even if Marposs can prevail on its direct infringement claim only by establishing that the defendants offered to sell the DF500 at a specific price, it does not follow that Marposs is required to plead this in its complaint. As previously noted, plaintiffs are not required to allege facts in support of the elements of their claims. *Pierce*, 128 F. App'x at 536. The facts alleged in Marposs's complaint suffice to establish a willingness on the defendants' part to enter into a bargain with Fives Landis. Under these circumstances, the claim is not defeated by the mere fact that the complaint does not allege that the defendants offered to sell the DF500 at specific price.

Finally, in addition to alleging that the defendants used and offered to sell the DF500, Marposs's complaint asserts that the defendants manufactured and/or imported the DF500 in the United States. *See* Compl. ¶ 27 ("As described above, [JIMG] manufactures, imports, uses, sells, and/or offers for sale the infringing DF500 device in and/or into the United States, and [JANA] imports, uses, sells, and/or offers for sale the infringing DF500 device in and/or into the United States.").

Like using and offering to sell, manufacturing and importing constitute infringing conduct under § 271(a). *See* 35 U.S.C. § 271 ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."). Thus, even if Marposs's direct infringement claim otherwise failed, it has stated a claim under the statute's "makes" and "imports" prongs.

**3.  Group Pleading**

JIMG separately argues that the complaint should be dismissed because its allegations fail to distinguish between JIMG and JANA. JIMG cites several places in the complaint where the defendants are referred to collectively as "Jenoptik" and where, consequently, the complaint "does not specify which entity is attributable to each act." JIMG Reply Br. at 9.

Such so-called "group pleading" does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims. *See, e.g., Sanders v. JGWPT Holdings, Inc.*, No. 14 C 9188, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016) ("'Group pleading' that refers to 'Defendants' collectively is sufficient under Rule 8 when a plaintiff provides enough detail about the nature of the allegations to put each defendant on fair notice of the claims.").

13

Here, Marposs's complaint provides the defendants with sufficient notice of the claims brought against them. On inspection, the examples of group pleading cited by JIMG turn out to be unproblematic. For instance, JIMG points out that the complaint alleges that "Jenoptik" had notice of Marposs's patents by virtue of Etamic's participation in the interference proceedings before the USPTO. According to JIMG, this leaves unclear whether JIMG or JANA, or both defendants, are alleged to have had notice of the patents. When read as a whole, however, the complaint makes clear that both entities are alleged to have had knowledge of Marposs's patents. *See, e.g.*, Compl. ¶ 41 ("On information and belief, notwithstanding *their* knowledge of the Marposs patents, Marposs's positions and Jenoptik's prior assertions withdrawing the product from the United States, Jenoptik made a presentation about the infringing DF500 device to Five Landis.") (emphasis added). JIMG argues that "JIMG and JANA cannot both be a predecessor-in-interest to a company." JIMG Reply Br. at 8. But Etamic is alleged to have been JIMG's and JANA's predecessor in interest, not vice versa.

JIMG also points to the allegation that Jenoptik is "importing, making, using, selling and/or offering to sell ... the DF500 device." Compl. ¶ 47. According to JIMG, this creates confusion because it suggests that both defendants are makers of the device, whereas the complaint elsewhere alleges that only

14

JIMG is the device's manufacturer. Again, the complaint's allegations are perfectly intelligible when read as a whole. Paragraph 47 alleges multiple ways in which the defendants have directly infringed Marposs's patents. Since JIMG is elsewhere identified as the only manufacturer of the device, paragraph 47's reference to manufacturing can naturally be understood as applying only to JIMG. The other acts of infringement alleged in the paragraph can be understood as applying to both defendants.

In short, Marposs's "group pleading" is not a basis for dismissing the complaint. Since the defendants' other arguments for dismissal likewise fail, their motion is denied insofar as Marposs's direct infringement claims are concerned.

## B. Indirect Infringement

Section 271 prohibits two forms of indirect infringement: inducing infringement under § 271(b), and contributory infringement under § 271(c). Marposs asserts both theories with respect to each of the four patents. I consider each theory separately below.

## 1. Inducement of Infringement

"Under Section 271(b), '[w]hoever actively induces infringement of a patent shall be liable as an infringer.'" *Goss Int'l Americas, Inc. v. Graphic Mgmt. Assocs., Inc.*, 739 F. Supp. 2d 1089, 1115 (N.D. Ill. 2010) (quoting 35 U.S.C. § 271(b)). "To prove inducement of infringement, a patentee must

show both: (1) direct infringement, and (2) that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Id.*

Marposs has stated a claim for inducing infringement. The complaint alleges that by "developing, marketing, advertising and/or providing the DF500 device" to their customers, the defendants induced them to use the infringing DF500 device. *See, e.g.*, Compl. ¶¶ 51, 64, 75.

The defendants contend that Marposs's inducement claim fails because the complaint does not allege direct infringement by a third party. I disagree. The complaint specifically alleges that, as a result of the defendants' actions, third parties -- including the defendants' customers -- have directly infringed each of the patents. *See, e.g.*, Compl. ¶¶ 51 & 52 ('571 patent); *id.* ¶¶ 64 & 65 ('239 patent); *id.* ¶¶ 75 & 76 ('361 patent); *id.* ¶¶ 86 & 87 ('700 patent). It is true that Marposs does not identify any third-party infringers by name, but there is no requirement that Marposs do so.

The defendants also argue that the inducement claim must be dismissed because they cannot be held liable for direct and indirect infringement based on the same actions. Their argument is based chiefly on *Johnson Products Co. v. Pro-Line Corp.*, No. 94 C 3555, 1998 WL 699024 (N.D. Ill. Oct. 5, 1998). There, the plaintiff alleged claims for both direct and induced

16

infringement. The court held that the inducement claim failed because the actions on which it was based (i.e., providing customers with instructions concerning how to use the product) were "subsumed" by those on which the direct claim was based (the plaintiff's manufacture of the infringing product). *Id*. at *15. The defendants similarly argue that the conduct on which Marposs's inducement claim is based (encouraging customers to use the DF500) are subsumed by those on which the direct infringement claim is based (i.e., selling the DF500 to customers).

Marposs addresses this argument only in a footnote in its response brief. Although the issue is a closer one than Marposs apparently recognizes, I decline to dismiss its inducement claim. At this stage, the precise nature of Marposs's direct and induced infringement claims has yet to be fleshed-out, and it is not possible to determine to what extent the actions on which the latter claim is based are distinct from those on which the former is based. Notably, *Johnson* was decided at the summary-judgment stage. As a result, the bases for the plaintiff's direct and induced infringement claims were readily discernable. At the pleading stage, however, courts have allowed plaintiffs to plead both claims. *See, e.g.*, *Datascape, Inc. v. Kyocera Wireless Corp.*, No. 1:05-CV-1651-CC, 2006 WL 8411935, at *8 (N.D. Ga. Sept. 12, 2006) ("[T]he Court cannot say at this early

17

stage that Datascape can prove no set of facts that would entitle it to relief based on theories of both direct infringement and indirect infringement."); *Pickholtz v. Rainbow Techs., Inc.*, 260 F. Supp. 2d 980, 990 (N.D. Cal. 2003) (direct and indirect infringement claims were not mutually exclusive where direct claim was based on defendant's making and use of its products and indirect claim was based on defendant's sales of its products to customers); *see also Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 450–51 (E.D.N.Y. 2012) (plaintiffs need not elect between theories of direct infringement and inducing infringement prior to trial so long as each claim is adequately pleaded). In short, the question whether the direct and induced infringement claims are based on the same conduct is best addressed after the factual record has been developed.

Accordingly, I conclude that Marposs has adequately alleged a claim for induced infringement.

## 2.    Contributory Infringement

Lastly, Marposs alleges that the defendants are liable for contributory infringement under § 271(c). "To establish contributory infringement, the patent owner must show the following elements...: 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that

18

the component is a material part of the invention." *Fujitsu Ltd.*
*v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Marposs alleges that the defendants have "contributed and
continue[] to contribute to the infringement of the [patents] by
third parties, who use or import the DF500 device into the
United States, by promoting, advertising, and marketing the
DF500 device ... and by providing the necessary equipment and
related documentation to third parties to operate the infringing
device." Compl. ¶ 53. The complaint additionally alleges that
JIMG has contributed to direct infringement by JANA. *See, e.g.*,
Compl. ¶ 54. These allegations are adequate to state claims for
contributory infringement as to each of the patents.

The defendants contend that the contributory infringement
claims fail because the complaint does not allege that the DF500
was incorporated into another party's infringing product. That
is incorrect. The complaint alleges that the DF500 was used with
the grinding machines used by various third parties. Compl. ¶¶
51-52; 64-65; 75-76; 86-87. The defendants argue that this is
not sufficient because the complaint does not specifically
allege that the grinding machines are infringing products.
However, the complaint alleges that the defendants have
contributed, and continue to contribute, to the infringement of
the patents. When the complaint is viewed in the light most
favorable to Marposs, it can be understood as alleging that the

19

grinding machines or other products into which the DF500 has been incorporated are infringing products.

The defendants also argue that the complaint fails to allege that they engaged in any of the acts listed in § 271(c) as bases for contributory infringement claims. According to the defendants, Marposs alleges that the defendants have engaged in contributory infringement only by promoting, advertising, and marketing the DF500 and by providing the necessary equipment and related documents. As already noted, however, the complaint also alleges that the defendants imported the DF500 device, Compl. ¶¶ 4-5, and importing is included among the forms of conduct proscribed by 271(c).

Finally, defendants contend that the DF500 cannot be the basis for both contributory and direct infringement claims. In support, they cite *Pickholtz v. Rainbow Technologies, Inc*., 260 F. Supp. 2d 980 (N.D. Cal. 2003). However, *Pickholtz*, like *Johnson*, held that direct and indirect claims cannot be based on the same action; it did not hold that direct and indirect claims cannot be based on the same *device*. And in any case, the defendants' invocation of this line of cases fails here for the same reason that it failed in connection with Marposs's inducement claim: at this juncture, it is too early to determine whether there is any set of facts under which Marposs might be able to prevail on both its direct and contributory infringement

20

claims. *See, e.g., Datascape*, 2006 WL 8411935, at *8; *Pickholtz*, 260 F. Supp. 2d at 990.

Thus, Marposs has stated a claim for contributory infringement with respect to each of the patents.

## CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 7, 2017